IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

BRANDON BEASLEY, #259429,　　　)
　　　　　　　　　　　　　　　　　)
　　　　　　　Plaintiff,　　　　　　)
　　　　　　　　　　　　　　　　　)
　　　v.　　　　　　　　　　　　　)　CASE NO. 2:17-CV-375-WKW
　　　　　　　　　　　　　　　　　)　[WO]
　　　　　　　　　　　　　　　　　)
LT. DANZEY,　　　　　　　　　　 )
　　　　　　　　　　　　　　　　　)
　　　　　　　Defendant.　　　　　　)

## RECOMMENDATION OF THE MAGISTRATE JUDGE

## I.  INTRODUCTION

This 42 U.S.C. § 1983 action is pending before the court on an amended complaint and amendment thereto filed by Brandon Beasley, an indigent state inmate, challenging actions that occurred in July of 2015 at the Easterling Correctional Facility. Docs. 1 & 8. Specifically, Beasley alleges that Lieutenant Joseph Danzey, a correctional officer employed at Easterling, failed to protect him from attack by inmate Cornelius Thomas. Docs. 5 at 2–3 & 8 at 1.  Beasley also alleges that inmate Thomas "was not placed on [his] enemy list" after the attack and complains that inmate Matthew Noble should be on his enemy list. Doc. 5 at 3.  Beasley seeks monetary damages and injunctive relief in this cause of action.

The defendant filed a special report and relevant evidentiary materials in support of his report, including affidavits, prison documents and medical records, addressing the claims presented by Beasley.  In these documents, Danzey denies that he acted with deliberate indifference to Beasley's safety.

After reviewing Danzey's special report, the court issued an order on August 28, 2017 directing Beasley to file a response to the report supported by affidavits or statements made under penalty of perjury and other evidentiary materials. Doc. 14 at 2. The order specifically cautioned that "**unless within fifteen (15) days from the date of this order a party . . . presents sufficient legal cause why such action should not be undertaken** . . . the court may at any time [after expiration of the time for the plaintiff filing a response to this order] and **without further notice to the parties** (1) treat the special report and any supporting evidentiary materials as a motion for summary judgment and (2) after considering any response as allowed by this order, rule on the motion for summary judgment in accordance with the law." Doc. 14 at 3.  Beasley filed no response to this order.

Pursuant to the directives of the August 28, 2017 order, the court now treats the defendant's special report as a motion for summary judgment and concludes that summary judgment is due to be granted in favor of the defendant.

## II.  SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam); Fed. R. Civ. P. Rule 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law.").  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995) (holding that the moving party has the initial burden of showing that there is no genuine dispute of material fact for trial).  The movant may meet this burden by presenting evidence indicating that there is no dispute of material fact or by showing that the nonmoving party has failed to present appropriate evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322–24; *Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011) (holding that the moving party discharges his burden by showing that the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove his case at trial).

The defendant has met his evidentiary burden.  Thus, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(e)(3); *Jeffery*, 64 F.3d at 593–94 (holding that, once a moving party meets its burden, "the non-moving party must then go beyond the pleadings, and by its own affidavits [or statements made under penalty of

perjury], or by depositions, answers to interrogatories, and admissions on file," demonstrate that there is a genuine dispute of material fact).  In civil actions filed by inmates, federal courts "must distinguish between evidence of disputed facts and disputed matters of professional judgment.  In respect to the latter, our inferences must accord deference to the views of prison authorities.  Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage." *Beard v. Banks*, 548 U.S. 521, 530 (2006) (internal citation omitted).  This court will also consider "specific facts" pleaded in a plaintiff's sworn complaint when considering his opposition to summary judgment. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014).  A genuine dispute of material fact exists when a party produces evidence that would allow a reasonable factfinder to return a verdict in its favor such that summary judgment is not warranted. *Greenberg*, 498 F.3d at 1263; *Allen v. Bd. of Pub. Educ. for Bibb Cnty.*, 495 F.3d 1306, 1313 (11th Cir. 2007).  "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted).  "[T]here must exist a conflict in substantial evidence to pose a jury question." *Hall v. Sunjoy Indus. Group, Inc.*, 764 F. Supp. 2d 1297, 1301 (M.D. Fla. 2011) (citation omitted).  "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a

motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Although factual inferences must be viewed in a light most favorable to the plaintiff and *pro se* complaints are entitled to liberal interpretation, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *See Beard v. Banks*, 548 U.S. 521, 525 (2006); *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, Beasley's *pro se* status alone does not compel this court to disregard elementary principles of production and proof in a civil case.

The court has undertaken a thorough and exhaustive review of all the evidence contained in the record. After this review, the court finds that Beasley has failed to demonstrate a genuine dispute of material fact in order to preclude entry of summary judgment in favor of the defendant.

## III. DISCUSSION

### A.   Absolute Immunity

To the extent Beasley seeks monetary damages from Danzey in his official capacity, Danzey is entitled to absolute immunity. Official capacity lawsuits are "in all respects other than name, . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). "A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, or Congress has abrogated the state's immunity. Alabama has not waived its Eleventh Amendment immunity, and Congress has not abrogated Alabama's immunity. Therefore, Alabama

state officials are immune from claims brought against them in their official capacities." *Lancaster v. Monroe Cnty.*, 116 F.3d 1419, 1429 (11th Cir. 1997) (citations omitted).

In light of the foregoing, Danzey is entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from him in his official capacity. *Lancaster*, 116 F.3d at 1429; *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1277 (11th Cir. 1998) (holding that state officials sued in their official capacities are protected from suits for damages under the Eleventh Amendment); *Edwards v. Wallace Community College*, 49 F.3d 1517, 1524 (11th Cir. 1995) (holding that damages are unavailable from a state official sued in his official capacity).

**B.    Failure to Protect—Deliberate Indifference to Safety**

"A prison official's duty under the Eighth Amendment is to ensure reasonable safety, a standard that incorporates due regard for prison officials' unenviable task of keeping dangerous men in safe custody under humane conditions." *Farmer v. Brennan*, 511 U.S. 825, 844–45 (1994) (internal quotation marks and citations omitted).  Officials responsible for prison inmates may be held liable under the Eighth Amendment for acting with "deliberate indifference" to an inmate's safety when the official knows that the inmate faces "a substantial risk of serious harm" and nevertheless disregards the risk by failing to take reasonable measures to abate it. *Id*. at 828.  A constitutional violation occurs only "when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not respond reasonably to the risk." *Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003).  "It is not, however, every injury suffered by one

6

prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer*, 511 U.S. at 834. "Within [a prison's] volatile community, prison administrators are to take all necessary steps to ensure the safety of . . . the prison staffs and administrative personnel. . . . They are [also] under an obligation to take reasonable measures to guarantee the safety of the inmates themselves." *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984) (internal quotation marks omitted).

The Eleventh Circuit has, however, stressed that a "prison custodian is not the guarantor of a prisoner's safety." *Popham v. City of Talladega*, 908 F.2d 1561, 1564 (11th Cir. 1990); *Purcell ex rel. Estate of Morgan v. Toombs Cnty., Ga.*, 400 F.3d 1313 (11th Cir. 2005) (same). "Only [a] prison official's deliberate indifference to a known, substantial risk of serious harm to an inmate violates the Eighth Amendment." *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014) (internal quotation marks and citation omitted). "In order to state a § 1983 cause of action against prison officials based on a constitutional deprivation [under the Eighth Amendment], there must be at least some allegation of a conscious or callous indifference to a prisoner's rights, thus raising the tort to a constitutional stature." *Williams v. Bennett*, 689 F.2d 1370, 1380 (11th Cir. 1982).

The law is well settled that establishment of both objective and subjective elements are necessary to demonstrate an Eighth Amendment violation. *Caldwell*, 748 F.3d at 1099. With respect to the requisite objective elements of a deliberate indifference claim, an inmate must first show "an objectively substantial risk of serious harm . . .

7

exist[ed].  Second, once it is established that the official is aware of this substantial risk, the official must react to this risk in an objectively unreasonable manner." *Marsh v. Butler Cnty., Ala.*, 268 F.3d 1014, 1028–29 (11th Cir. 2001), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).  As to the subjective elements, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. . . . The Eighth Amendment does not outlaw cruel and unusual conditions; it outlaws cruel and unusual punishments. . . . [A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 837–38 (internal quotation marks omitted); *Campbell v. Sikes,* 169 F.3d 1353, 1364 (11th Cir. 1999) (citing *Farmer*, 511 U.S. at 838) ("Proof that the defendant should have perceived the risk, but did not, is insufficient."); *Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996) (same).  The conduct at issue "must involve more than ordinary lack of due care for the prisoner's interests or safety. . . . It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

Consequently, to proceed beyond the properly supported motion for summary judgment filed by the defendant, Beasley must first demonstrate that inmate Thomas presented an objectively substantial risk of serious harm and "that the defendant disregarded that known risk by failing to respond to it in an objectively reasonable

8

manner." *Johnson v. Boyd*, 568 F. App'x 719, 721 (11th Cir. 2014) (citing *Caldwell*, 748 F.3d at 1100). If he establishes these objective elements, Beasley must then satisfy the subjective component. To do so, Beasley "must [show] that the defendant subjectively knew that [he] faced a substantial risk of serious harm. The defendant must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [they] must also draw the inference." *Id*. (internal citation omitted).

> To survive a motion for summary judgment, a plaintiff must submit evidence that the defendant-official had subjective knowledge of the risk of serious harm. In determining subjective knowledge, a court is to inquire whether the defendant-official was aware of a "particular threat or fear *felt by [the] [p]laintiff*." Moreover, the defendant-official "must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists—and the prison official must also draw that inference."

*Johnston v. Crosby*, 135 F. App'x 375, 377 (11th Cir. 2005) (citations omitted and emphasis in original).

In providing a factual background for his failure-to-protect claim, Beasley maintains that at some time prior to the attack by inmate Thomas he advised Danzey that "due to an incident in the county jail with a inmate Matthew Noble who is a member of a gang (the Crips) . . . this gang had placed a hit on Brandon Beasley. Danzey refused to investigate [and] a few days later Beasley was stabbed in his sleep [by inmate Thomas]." Doc. 5 at 1. Beasley alleges Danzey acted with deliberate indifference to his safety with respect to this attack. As support for this assertion, Beasley contends that defendant Danzey failed to ensure his safety after he informed Danzey of a purported incident with

9

inmate Matthew Noble while housed in the county jail which he believed resulted in a hit

placed on his life by the Crips gang.  Notably, however, Beasley does not allege that he

ever identified inmate Thomas as posing a danger to him.

Danzey denies acting with deliberate indifference to Beasley's safety and

addresses the allegations set forth in the complaint as follows:

> On July 6, 2015, I . . . was assigned as a Lieutenant over the Night B Shift
> at Easterling Correctional Facility.   At approximately 1:26 AM, I was
> notified that inmate Brandon Beasley, W/259429, had been stabbed inside
> Dormitory G2, by inmate Cornelius Thomas, B/255935.  Inmate Beasley
> stated that when he woke up, he observed inmate Thomas running away
> from his bed with a knife and that's when he noticed that he was bleeding.
> He did not give me a reason why the incident occurred.  At no time did
> Inmate Beasley[] tell me that the incident was gang related, nor did he
> report to me about an incident that allegedly took place at [a] county jail
> with inmate Matthew Noble, B/271918.  Inmate Beasley was taken to the
> Health Care Unit, examined by the medical staff, and then released back to
> his dormitory.  Inmate Thomas was placed into the Segregation Unit for
> Assault with a weapon on another inmate.  Inmate Thomas stated that the
> incident occurred over an argument about their living area.  Inmate Thomas
> remained in Segregation until he was transferred [from Easterling].   At
> approximately 1:35 AM, I reported the incident to Captain Willie Bryant,
> Warden Carter F. Davenport, and the Investigation and Intelligence
> Division.

Doc. 11-5 at 1.  Moreover, contrary to Beasley's assertion in this lawsuit, the Inmate

Validation Committee validated inmate Thomas as his enemy on August 11, 2015 based

on Thomas' admission that he stabbed Beasley. Doc. 11-4 at 2.  The undisputed record

further establishes that Thomas informed Danzey he stabbed Beasley "because [Beasley]

thinks he rules our cut [or living area, and] I'm tired of these white boys." Doc. 11-1 at 1.

Despite Beasley's conclusory allegation that Danzey failed to protect him from

attack by inmate Thomas, Beasley does not allege that he complained to Danzey or any prison official before this attack that he was in danger from inmate Thomas.  In addition, the record is devoid of evidence that Beasley notified Danzey of a previous incident or credible threat from which Danzey could infer that inmate Thomas posed a substantial risk of harm to Beasley prior to the attack at issue.  Specifically, the record contains no evidence that Danzey had knowledge of any impending risk of harm, substantial or otherwise, posed by inmate Thomas to Beasley.

In sum, there is no evidence before the court of "an objectively substantial serious risk of harm" posed by inmate Thomas to Beasley prior to the July 6, 2015 attack, as is necessary to establish deliberate indifference. *Marsh*, 268 F.3d at 1028–29.  The general allegations made by Beasley regarding a potential threat to his safety from inmate Matthew Noble and unidentified gang members do not provide an objective basis on which to find that Thomas posed a serious risk of harm to Beasley.  Furthermore, even if Beasley had satisfied the objective component, his deliberate indifference claim fails because he has presented no evidence that Danzey was subjectively aware of any risk of harm to him posed by Thomas. *Johnson*, 568 F. App'x at 722 (affirming the dismissal of a complaint for failure to state a claim because "[n]owhere does the complaint allege, nor can it be plausibly inferred, that the defendants subjectively foresaw or knew of a substantial risk of injury posed by [inmate-attacker]"); *Murphy v. Turpin*, 159 F. App'x 945, 948 (11th Cir. 2005) (dismissing failure-to-protect charge for failure to state a claim where the plaintiff "did not allege that the defendants had notice that he was in danger

from . . . the inmate who attacked him"); *Johnston*, 135 F. App'x at 377 (holding that defendants were entitled to summary judgment because Plaintiff provided no evidence that prison officials "had subjective knowledge of the risk of serious harm presented by [inmate attacker]" and "introduced no evidence indicating that he notified [the defendants] of any particularized threat by [his attacker] nor of any fear [he] felt [from this particular inmate]").  In light of the foregoing, summary judgment is due to be granted in favor of Danzey on the claim alleging he acted with deliberate indifference to Beasley's safety.

## IV.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.      Danzey's motion for summary judgment be GRANTED.

2.      Judgment be GRANTED in favor of Danzey.

3.      This case be DISMISSED with prejudice.

4.      Costs be taxed against the plaintiff.

On or before **October 27, 2017**, the parties may file objections to this Recommendation.  A party must specifically identify the factual findings and legal conclusions in the Recommendation to which the objection is made.  Frivolous, conclusive, or general objections to the Recommendation will not be considered.

Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) shall bar a party from a *de novo* determination by the District Court of legal and factual issues

12

covered in the Recommendation and waives the right of the party to challenge on appeal

the District Court's order based on unobjected-to factual and legal conclusions accepted

or adopted by the District Court except upon grounds of plain error or manifest injustice.

11th Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144,

1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

      DONE this 13th day of October, 2017.

                                      _____

                                        GRAY M. BORDEN
                                        UNITED STATES MAGISTRATE JUDGE